IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

MYLAN PHARMACEUTICALS, INC., et al.,
        Plaintiffs,

vs.                                    Civil Action No. 1:03CV16

MORVILLO, ABRAMOWITZ, GRAND,
IASON & SILBERBERG, P.C.,
        Defendants

and

MYLAN PHARMACEUTICALS, INC., et al.,
        Plaintiffs,

vs.                                      Civil Action No. 1:03CV180

CLIFFORD CHANCE US LLP, et al.,
        Defendants.

**OPINION/ORDER DECIDING DOCKET ENTRIES 268 and 269**

This is a professional malpractice action filed by Mylan Pharmaceuticals Inc., *et al.*, hereinafter called "Mylan," against Morvillo, Abramowitz, Grand, Iason & Silberberg, P.C., hereinafter called "Morvillo," and Clifford Chance US LLP, *et al.*, hereinafter called "Chance," lawyers who previously represented Mylan in the *In re Lorazepam & Clorazepate Antitrust Litigation, MDL No. 1290* and related MDL cases, hereinafter called "anti-trust litigation."

**I. Procedural History**

Defendant Chance filed its Motion to Compel Depositions of Mylan Executives and Employees [Docket Entry 268] on November 9, 2005. Mylan filed its Motion for Protective Order [Docket entry 269] on November 9, 2005. Chance filed its Opposition to Mylan's Motion for Protective Order [Docket Entry 278] on November 23, 2005. Mylan filed its Opposition to Chance's

Motion to Compel [Docket Entry 280] on November 28, 2005.

## II.  Contentions of the Parties

Chance moves the Court to compel Mylan to provide certain Mylan executives and employees for deposition.[1]  Mylan summarized its grounds for opposing the Motion as follows:

> (a) The witnesses whom Clifford Chance noticed for depositions (Milan Puskar, Richard Stupar and Leah Summers) were deposed four times, three times and two times, respectively, in the Antitrust Litigation.  Further deposition of them concerning the underlying antitrust case merits is indisputably cumulative, a sufficient ground in and of itself to preclude the depositions.  Furthermore, depositions on the issues covered in the Antitrust Litigation would also be oppressive and unfair to these individuals.  The events leading to the filing of the Antitrust Litigation occurred 7-8 years ago.  Repetitive questions on those events now cannot lead to new information, and at most might be sought in order to develop minor inconsistencies.  This is not a legitimate need.
>
> (b) In addition to three sessions of depositions, Mr. Stupar also provided two days of trial testimony in one of the Antitrust Litigation actions.
>
> (c) There are dozens of other depositions of Mylan witnesses and others regarding the underlying merits, all of which are available to Clifford Chance.
>
> (d) The full trial transcript in one of the Antitrust Litigation matters is available to Clifford Chance, and Clifford Chance's counsel in this matter actually watched the entire trial.
>
> (d)[sic] Clifford Chance's position that it should have the unqualified right to ask any questions about the underlying merits is inconsistent with the discovery plan laid out at the outset of this malpractice litigation and presented to Chief Judge Keeley.  Pursuant to that plan, Clifford Chance was made a party to the Protective Order in the Antitrust Litigation in order to allow it and its counsel access to all

---

[1] Chance expressly refers to Richard Stupar, Milan Puskar and Leah Summers, but moves the Court to extend its Ruling on this Motion to other similarly-situated witness who previously have been deposed in the underlying antitrust litigation.

2

pleadings, discovery, deposition transcripts, trial transcripts, expert reports, etc. and thus avoid duplicative discovery in this case. Clifford Chance represented to Judge Hogan in the Antitrust Litigation that access to the underlying record was needed precisely to avoid having to cover the same ground in this case . . . .

(e) Clifford Chance wants the best of all worlds: now that it has obtained full access to the discovery and court papers in the Antitrust Litigation based on its representation that such access would eliminate the need to redevelop those facts, Clifford Chance also wants the unfettered right to revisit subjects from the underlying litigation. As noted above, developing minor inconsistencies that must be expected given the passage of time and fading memories is not a valid basis for imposing cumulative discovery.

(f) Allowing depositions on topics covered so many times before in the Antitrust Litigation would be a waste of party and judicial resources, unduly burdensome and an unnecessary expense.

The Court notes that Mylan states:

Mylan has no objection to Clifford Chance exploring litigation or settlement decisions or communications during the time Clifford Chance represented Mylan in the Antitrust Litigation, or any of the subjects Chief Judge Keeley held were discoverable in her April 19, 2005 Order.[2] Mylan merely objects to the cumulative, wasteful and oppressive reexamination of its personnel concerning the underlying antitrust case merits.

Chance does not dispute that the individuals it wishes to depose were deposed, sometimes multiple times, in the underlying Antitrust Litigation. Chance, however, argues it has never itself had an opportunity to depose the witnesses, nor has any party accused of legal malpractice with respect to the antitrust issues done so. Chance asserts that a party's right to examine witnesses, even regarding subjects on which they have already given testimony in prior proceedings, is fundamental.

---

[2]The Court was unable to locate an April 19, 2005 Order entered by Chief Judge Keeley.

## III.  Discussion

Rule 26(b) of the Federal Rules of Civil Procedure provides as follows:

> (1) In General.  Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . . For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action.  Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.
>
> (2) Limitations . . . . The frequency or extent of use of the discovery methods otherwise permitted under these rules and by any local rule shall be limited by the court if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking  discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues . . . .

F.R.Civ.P. 26(c) provides as follows:

> Upon motion by a party or by the person from whom discovery is sought, accompanied by a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action, and for good cause shown, the court in which the action is pending . . . May make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:
>
>> (1) that the disclosure or discovery not be had;
>> (2) that the disclosure or discovery may be had only on  specified  terms  and  conditions,  including  a designation of the time or place;
>> (3) that the discovery may be had only by a method of discovery other than that selected by the party seeking discovery;
>> (4) that certain matters not be inquired into, or that the

> scope of the disclosure or discovery be limited to
> certain matters . . . .

Mylan has not cited any authority on the matter of limiting discovery in a civil suit based upon discovery and testimony obtained in a prior suit. Mylan cites two cases, neither of which supports its argument. Mylan cites <u>Mallas v. United States</u>, 54 F.3d 773, 1995 WL 290401 (4th Cir. 1995), stating the court in that case applied F.R.Civ.P. 26 and "affirm[ed] protective order preventing second deposition of witness." In <u>Mallas</u>, a per curiam, unpublished decision, the Court of Appeals had remanded the case to the district court to provide the plaintiff an opportunity to prove the IRS acted willfully or with gross negligence. <u>Id.</u> Mallas had not sought any discovery on this issue prior to the remand. Consequently, on remand he served on the government a request for document production, interrogatories and a notice of deposition. The government responded with a motion for a protective order, arguing that Mallas had ample opportunity to conduct his discovery when the case was originally before the district court. The district court granted the government's Rule 26(c) motion and ordered "that discovery shall not be and is not reopened." <u>Id.</u> Mallas appealed this decision. The Fourth Circuit noted that Mallas had had more than a year to conduct discovery before the remand, and held:

> In view of the ample time he had for discovery, we cannot say the
> district court abused its discretion in issuing a Rule 26(c) protective
> order that blocked the reopening of discovery on remand.

<u>Id.</u> If there was an issue regarding "preventing a second deposition of witness" in <u>Mallas</u>, the Fourth Circuit did not address it in this decision.

Mylan's other cited case, <u>Nicholas v. Wyndham International, Inc.</u>, 373 F.3d 537 (4th Cir. 2004), likewise does not support its argument. Mylan states <u>Nicholas</u> "uph[eld] protective order barring repetitive depositions." While this is a correct statement of the holding in the case, the facts

5

and law in Nicholas are easily distinguishable from the case at bar. The defendants in Nicholas had already deposed both plaintiffs in the case. They later sought to compel the deposition of a 30(b)(6) designee of the plaintiffs' company, Brainwave. Plaintiffs sought a protective order disallowing the deposition. The district court granted the motion for protective order, in part concluding the discovery sought "was cumulative and duplicative, overly broad, unnecessarily burdensome, and harassing." Id. at 540. The Fourth Circuit held that the district court did not abuse its discretion in denying Defendants the discovery they sought from Brainwave, Plaintiffs' business, reasoning:

> Wyndham had already deposed both Plaintiffs, and Wyndham's counsel conceded to the district court that Brainwave could have no more information about the facts of liability and damages than Plaintiffs themselves had. (Indeed, Wyndham was aware that either of the Plaintiffs would have been designated as Brainwave's corporate representative at any deposition.)

The issue in Nicholas therefore concerned a second deposition of the same party in the same litigation. It does not address the issue at bar: whether the Court should disallow a deposition based on the fact that the witness had been deposed in a prior action.

Chance does not cite any Fourth Circuit law in support of its argument that the depositions should be allowed, and the Court could locate none. Chance cites S.E.C. v. Saull, 133 F.R.D. 115 (N.D. Ill 1990). The argument in Saull was that the SEC should be precluded from taking the depositions certain witnesses because the SEC exhausted all discovery relevant to the case during the administrative investigation, and consequently, the depositions of those witnesses would be duplicative and should therefore be precluded to spare the defendants from undue burden and expense. The court, however, disagreed, stating:

> Neither the defendants nor the SEC have cited any authority which is controlling on the matter of limiting discovery in a civil suit like this one based upon the administrative investigation which preceded

6

it. Rule 26(b)(1) of the Federal Rules of Civil Procedure directs the Court to impose limits upon discovery which is "unreasonably cumulative or duplicative" or unduly burdensome or expensive," and ample authority recognizes a court's duty to invoke this rule when the discovery taken or proposed within the confines of a case exceeds reasonable limits. However, few cases grapple with the notion of limiting discovery in an action based upon discovery conducted in a prior proceeding.

Id. at 117 (internal citations omitted). The court held:

> Thus, there is no authority which suggests that it is appropriate to limit the SEC's right to take discovery based upon the extent of its previous investigation into the facts underlying its case, and the Court is not inclined to set such a precedent here. The parties agree that the SEC's administrative investigation in this case was thorough, and there appears to be little dispute that the proposed depositions will overlap to some degree with the testimony taken in the court of that investigation. Whatever overlap there might be, however, is not sufficient to deprive the SEC of the discovery to which it is otherwise plainly entitled under the Federal Rules of Civil Procedure, absent some showing of bad faith, harassment, or legal impropriety. Defendants place much emphasis on the fact that the witnesses whom the SEC now seeks to depose have already been examined thoroughly, in the presence of counsel for all parties . . . The Court will not foreclose the SEC from availing itself of this right by precluding certain depositions altogether, or by attempting to limit the scope of these depositions . . . .

Id. at 118. Further:

> The Court is not unmindful that the five depositions which the SEC proposes to take will burden defendants to some degree. Yet, the same is true in any case, and however clear the defendants may believe the issues to be and however eager they may be to press on to trial does not supply a reason to deprive the SEC of the discovery to which it is entitled under the Rules of Civil Procedure.

Id. At 119.

The Court notes that in Saull, the court allowed depositions of witness who had already been deposed by the same party, albeit in an administrative proceeding. Here, Mylan asks the Court to

7

disallow or limit depositions of witnesses who were deposed in a separate case, in which Chance did not even have the opportunity to depose the witnesses.

> Motions to prohibit depositions on the grounds that the information has already been obtained in a different form or that the depositions will not reveal much new information are not favored. 8 C. Wright & A. Miller, *Federal Practice and Procedure* § 2037 (1970). Depositions provide an important crucible for determining whether or not the information has been both fully and accurately revealed through employment of the art of cross-examination. Plaintiff deserves that chance.

UAI Technology, Inc. v. Valuetech, Inc., 122 F.R.D. 188 (M.D.N.C. 1988). Further:

> In seeking to prevent plaintiff from deposing any of its customer, defendant faces a heavy burden. Courts are extremely hesitant to prohibit the taking of a discovery deposition and most requests of this nature are denied . . . . In order to obtain a Rule 26(c) protective order, defendant must establish good cause . . . . In short, the court must weigh the need for the information versus the harm in producing it. Protective orders may be granted for a wide variety of purposes, such as to preserve confidential information and to protect against annoyance, embarrassment oppression, and undue burden . . . .
>
> In order to obtain a protective order prohibiting a deposition, the proponent must convince the Court that the information sought by the deposition lacks relevance to the extent that the likelihood and severity of the harm or injury caused by the deposition outweighs and need for the information . . . . The need for the information is a function of its relevancy, which in turn is construed more broadly for purposes of discovery and is not tied to admissibility.

Id. at 191 (internal citations omitted).

In another case, the Middle District of North Carolina again noted that "a Rule 26(c), Fed. R. Civ. P., protective order should be sparingly used and cautiously granted." Medlin v. Andrew, 113 F.R.D. 650 (M.D.N.C. 1987). Again, the court noted:

> Not only are protective orders prohibiting depositions rarely granted, but Plaintiff has a heavy burden of demonstrating the good cause for such an order. For example, in *Grinnell Corp. v. Hackett*, 70 F.R.D.

8

> 326, 333-334 (D.R.I. 1976), the court held that in order to obtain a protective order prohibiting a deposition based on grounds of harassment, the movant must show lack of relevance in addition to the likelihood of harassment being more probable than not. Conclusory assertions of injury are simply insufficient.

Id. at 653 (internal citations omitted).

### IV. Findings

Based on the application of the above-cited law to the facts of this case, the Court finds:

1) Chance appeared in the previous Antitrust Litigation as counsel to Mylan. Mylan has sued Chance alleging malpractice and other claims relating to legal services Chance provided to Mylan concerning the antitrust claims and settlements in the previous litigation.

2) In the case at bar, Mylan alleges Chance "failed to marshal key facts, fully develop key defenses, or develop an effective overall litigation strategy" and "that Clifford Chance committed malpractice in that Mylan had meritorious defenses, had no liability, and the settlement was structurally flawed." (Memorandum in support of Joint Motion to Modify Protective Order at 4).

3) The witnesses at issue and those similarly situated were deposed, sometimes multiple times, in the underlying Antitrust Litigation, but not in the present legal malpractice litigation. The depositions are therefore not cumulative or duplicative as those terms are generally understood.

4) Issues in the underlying Antitrust Litigation are significantly different than issues raised by the present malpractice suit.

5) There may well be overlapping facts common to both the Antitrust Litigation and the present malpractice suit. "Whatever overlap there might be, however, is not sufficient to deprive [Chance] of the discovery to which it is otherwise plainly entitled under the Federal Rules of Civil Procedure, absent some showing of bad faith, harassment, or legal impropriety." Saull, supra, at 118.

9

6) Neither Chance nor any other malpractice defendant, had an opportunity to question or cross-examine witnesses in the previous Antitrust Litigation.

7) "The Court is not unmindful that the [] depositions which [Chance] proposes to take will burden defendants to some degree. Yet, the same is true in any case, and however clear [Mylan] may believe the issues to be and however eager[it] may be to press on to trial does not supply a reason to deprive [Chance] of the discovery to which it is entitled under the Rules of Civil Procedure." Saull, supra at 119.

8) Mylan has not "convince[d] the Court that the information sought by the deposition lacks relevance to the extent that the likelihood and severity of the harm or injury caused by the deposition outweighs any need for the information." UAI, supra at 191.

9) Inquiry involving the merits of the underlying Antitrust Litigation may be relevant, at least as applies to discovery, to the issues raised by Mylan regarding Chance's defense of the Antitrust Litigation, for example, it's claims that Mylan had meritorious defenses or had no liability.

## ORDER

**Docket Entry 268**

For the reasons herein stated, "Defendant Clifford Chance's Motion to Compel Depositions of Mylan Executives and Employees" [Docket Entry 268] is **GRANTED.** This Order expressly applies to the individuals named in Chance's Motion, but, as requested by Chance, is extended to encompass any similarly-situated individual. This Order does not, however, deprive Mylan of the right to object to the deposition of such similarly-situated individuals on other grounds.

**Docket Entry 269**

For the same reasons herein stated "Mylan's Motion for Protective Order" [Docket Entry

269] is **DENIED**.

Notwithstanding denial of the relief sought by Mylan, the Court finds that Mylan was substantially justified in bringing this unique issue to the Court for decision. Accordingly, no costs are awarded to Chance. A party is not penalized for guessing wrong when there is little or no precedent.

The Clerk of Court is directed to send copies of this Order to all counsel of record.

DATED: December 2, 2005

/s *John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE