**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**MYLAN PHARMACEUTICALS, INC., et al.,**

        **Plaintiffs,**

*vs*.                                **Civil Action No.  1:03CV16**

**MORVILLO, ABRAMOWITZ, GRAND,**
**IASON & SILBERBERG, P.C.,**

        **Defendants**

*and*

**MYLAN PHARMACEUTICALS, INC., et al.,**

        **Plaintiffs,**

*vs*.                                **Civil Action No.  1:03CV180**

**CLIFFORD CHANCE US LLP, et al.,**

        **Defendants.**

### <u>OPINION / ORDER DECIDING CROSS MOTIONS TO COMPEL</u>

On the 20th day of January, 2006 came the Plaintiff by its counsel of record, Gordon Copeland and Adam Ennis appearing and joined by Ben D. Scheibe and others by telephone and Defendant by its counsel, Kevin Hodges, John Schmidtlein,  James N. Riley, Rebecca L. Donnelan and Elliott G. Hicks appearing and joined by others by telephone for consideration of Defendant's Corrected Motion To Resolve Discovery Dispute filed January 17, 2006 (Docket Entry 315) and Plaintiff's Motion To Compel Compliance With The Order And Local Rules Of This Court filed January 19, 2006 (Docket Entry 318).

The Court inquired of the parties if there was any evidence to be taken and considered with respect to the two pending motions.  The parties each advised the Court that there was no evidence to be taken and that everything the Court needed to decide the motions was in the record.

The Court then proceeded to hear such arguments as the parties each desired to make and to make specific inquiries of the parties' counsel with respect to particular areas that were of interest.

Thereafter, the Court took the matter under consideration.

**Background:**

This is an action brought by Mylan against Chance seeking damages for alleged legal malpractice, improper billing and fraud incident to representation of Mylan in certain anti-trust litigation. The action was instituted in 2003. The last scheduling order of the Court (November 10, 2005)(Docket Entry 270) set close of discovery for February 7, 2006.

Earlier in the case the parties became embroiled in discovery disputes and particularly a dispute relating to the language to be used in a protective order resulting in Defendant filing a Motion For Protective Order dated November 15, 2004. Plaintiff filed a Cross Motion for Confidentiality and Protective Order on November 24, 2004. After briefings were filed, the matter was heard on January 6, 2005. During the hearing the parties represented that they were working and could resolve most if not all of the remaining issues presented by the cross motions if the Court would give them additional time. Hearing nothing from the parties, the undersigned Magistrate Judge entered an Opinion/Order Deciding Docket Entries 112, 94 and 98 (Docket Entry 131) on March 3, 2005.

The March 3, 2005 Order contained a protective order which in pertinent part provided:

8. Inadvertent production of any information, document or thing without it being designated 'Confidential-WV' shall not itself be deemed a waiver of any claim of confidentiality as to such matter, and the same may thereafter be designated as confidential. A party may not be held in violation of this Order for the distribution of documents or information, otherwise in violation of the Order, prior to the designation of the documents or information as confidential, except that no deposition transcript shall be disclosed or distributed in a manner prohibited by paragraph 3 of this Order until the time period for designating transcripts as confidential, as provided by this Order, has expired.

9. If any material subject to any privilege or legal prohibition against disclosure in

this proceeding is inadvertently provided to another party to this proceeding, the fact of disclosure shall not constitute a waiver of the applicable privilege or legal prohibition against disclosure. By notification by a party producing documents that material subject to a privilege or legal prohibition against disclosure has been provided inadvertently, the party receiving such material shall **either** (a) **immediately return the material, including any copies of the material, to the producing party, and shall destroy any notes or work product concerning the material**; or (b) if the party receiving the material disagrees with the producing party's claim, the dispute **shall be submitted to the Court for resolution before the party receiving the material uses it in any way**. In any such dispute, the party seeking return of the material shall have the burden of making the motion to establish entitlement to return of the material. (Emphasis added by the Court).

No appeal of the Protective Order was filed.

By Order dated April 18, 2005 (Docket Entry 169) the undersigned Magistrate Judge held that Mylan had waived certain privileges with respect to documents created by counsel during the antitrust litigation and required production of the same.

Pursuant to Rule 72(a) Mylan filed objections to the April 18, 2005 Opinion/Order Deciding Discovery Motions.

On September 8, 2005 the District Judge conducted a status conference and heard arguments on Mylan's objections to the April 18, 2005 Order and entered an order dated September 19, 2005 (Docket Entry 223) holing in pertinent part:

Mylan, however, need only disclose materials and communications within its control and custody involving the later direct purchaser settlement and indirect purchaser litigation with respect to the following issues: (1) whether Clifford Chance's work product was used in the defense of the L&C litigation, including both the direct purchaser settlement and the indirect purchaser litigation; (2) whether Clifford Chance's work product was used by Mylan's experts in rending their opinions in the L&C litigation; (3) what, if any, ongoing problems might have been inherited by subsequent counsel because of the alleged negligence of Clifford Chance; and (4) why Mylan later settled with the direct purchasers if it was persuaded that the issues in the lawsuit were ones that Mylan would win based either on the law or the facts or both.

Mylan had until November 23, 2005 within which to produce the documents responsive to the Court's September 19, 2005 Order. Mylan asked the three firms that represented it in the L&C

litigation after the departure of Chance, to produce the responsive documents. A universe of between 750,000 and 1,000,000 documents existed in the files of DKW, Hogan and Hartson and King & Spaulding. The other two firms sent all their documents to DKW and DKW also collected all documents in Mylan's custody concerning the ongoing litigation. DKW was then tasked with determining what documents should be produced under the Court's Order. The primary attorneys from DKW assigned to this litigation did not initially directly review the material. They relied on other attorneys to conduct an initial review. These attorneys did not have "an intimate knowledge of the case, a direct understanding of the disputes leading to the orders of Judge Keeley and Magistrate Judge Kaull, and the scope of documents that were within and those that were not within the scope of the required production." Ennis and Ray Stoner of DKW "communicated to the other attorneys the intended scope of the production and instructed that questions concerning documents should be directed to[them]." DKW anticipated that King & Spaulding and Hogan and Hartson would review the documents to be produced before production. (Ennis Declaration - Exhibit 1 Mylan Brief).

Mylan made the following six productions of documents on CDROM to Counsel for Chance:

a.  September 28, 2005 = 4,674 pages;

b.  October 5, 2005 = 20,402 pages;

c.  October 31, 2005 = 1,094 pages;

d.  November 1, 2005 = 115 pages;

e.  November 18, 2005 = 1,643 pages; and

f.  November 22, 2005 = 705 pages.

On October 14, 2005 Charles Davant IV of one of the law firms representing Chance in the within litigation determined that some materials (apparently unrelated to the pending document

dispute) had been inadvertently produced and returned the same and deleted them from its data base.

On November 22, 2005 Ennis received a call from a King & Spaulding attorney advising him that documents from King & Spaulding's files had been produced without their review. Ennis reviewed the documents produced November 18, 2005 (1,643 pages) and determined that "many of the documents did not address any of the four issues specified by Chief Judge Keeley." Troy Cady of DKW notified one of Chance's attorneys in the within case, by phone and email that "the disc sent to you this past Friday ... contained documents that were inadvertently produced. ... We are currently in the process of assembling a corrected disc which will be overnighted to you today, for arrival tomorrow. Please make arrangements to destroy printouts from the previously forwarded disc ... and return the disc to my attention." (Ennis Declaration - Exhibit 1 Mylan Brief).

By electronic and U.S. mail, Charles Davant IV, of the counsel representing Chance, sent a letter to attorney Troy L. Cady, of the counsel representing Mylan, confirming that he had been told by Mylan's counsel on November 22, 2005 of "a possible inadvertent production of documents by Mylan on the compact disk ....(containing 1,643 pages"). Davant stated he "did set aside the disk and ceased our review following your call; however, prior to that time, we had already invested substantial effort reviewing and coding documents on this disk. None of the documents we reviewed appeared to be outside the four relevant categories. Moreover, we do not wish to discard or destroy these documents because doing so would also discard or destroy our work product created during our document review. So that we may evaluate and respond to Mylan's claim of inadvertent production please identify the particular documents Mylan contends should not have been produced. Once we have this information, we will expeditiously assess Mylan's claim and hopefully resolve this matter promptly."

On December 8, 2005 attorney Cady wrote (Fax and U.S. Mail) Davant advising him that

Mylan's production "contained many documents that were not in the four categories of information Chief Judge Keeley held must be produced"; attached photocopies of the Bates stamped disks at issue; advised that Mylan was burning new disks and called for Chance to cease using the documents on the disks at issue and to return those disks to Mylan's counsel.

Davant wrote Troy Cady electronically and by U.S. Mail on December 12, 2005 expressing surprise to the December 8, 2005 letter; announced that the documents had already been coded and incorporated into work-product and plans for discovery; denied that the documents had been produced inadvertently because they appeared to be relevant and announced their intent to continue to use the documents unless and until Mylan's counsel could show specific documents that were outside of the September 19, 2005 Order that had been inadvertently produced.

On December 23, 2005 Cady wrote Davant (Fax and U.S. Mail) advising Chance by spread sheet of the documents Mylan claimed were subject to "snapback" pursuant to the claim of inadvertent disclosure.

On January 4, 2006, by electronic and U.S. Mail, Davant expressed surprise by the December 23, 2005 letter from Cady; declared that the Protective Order was inapplicable because the documents identified as improperly produced were not "subject to any privilege or legal prohibition against disclosure."

The parties continued to talk relative to out of court resolution of the dispute between January 4, 2006 and through the January 11, 2006 letter from John Schmidtlein to Ennis and Stoner suggesting a compromise in light of Mylan's counsel instruction of a deposition witness to not answer questions concerning a document Mylan claimed had been inadvertently produced.

Chance filed its original motion and request for an expedited hearing on January 12, 2006 (Docket Entry 311) and followed it with its Corrected Motion on January 17, 2006 (Docket Entry

315).  Mylan filed its cross motion as part of its response to Chance's Motion on January 19, 2006 (Docket Entry 318) thereby joining the issue for decision by the Court.

**Relief Sought By The Parties:**

**Chance**

Defendant Clifford Chance's Corrected Motion To Resolve Discovery Dispute requests the following specific relief:

[T]hat the Court enter an order that Mylan shall permit witnesses to answer questions concerning the documents Mylan produced in September, October, and November 2005, subject to Mylan's objections to be resolved before trial as to the particular documents Clifford Chance wishes to use at trial.

**Mylan**

Plaintiff's Motion To Compel Compliance With The Order And Local Rules Of This Court requests the following specific relief:

1) Compelling Clifford Chance and its attorneys to return all documents subject to a claim of privilege, as set forth more particularly in the attached memorandum of law.

2) Requiring Clifford Chance and its attorneys to destroy all work product created by review of the privileged documents that were inadvertently produced.

3) Establishing mechanisms to ensure the collection and destruction of work product, and ensuring that Clifford Chance does not improperly obtain advantage from this violation of the local rules and order of this court.

4) "Awarding Mylan its attorney's fees and costs incurred in making this

motion.

5)     Awarding Mylan all such other and further relief as the law and the facts may warrant.

**Discussion:**

**Local Rule 26.04(a)(2)(D) and Court's Protective Order**

NDWV L.R.Civ.P. 26.04(a)(2)(D) provides:

"A party who produces material or information without intending to waive a claim of privilege does not waive that claim under these rules or the Rules of Evidence if – within ten days or a shorter time ordered by the Court after the producing party actually discovers that such production was made – the producing party amends the response, identifying the material or information produced and stating the privilege asserted. If the producing party thus amends the response to assert a privilege, the requesting party must promptly return the specified material or information and any copies pending any ruling by the Court denying the privilege."

The Court's Protective Order provides:

9. If **any material subject to any privilege or legal prohibition** against disclosure in this proceeding **is inadvertently provided** to another party to this proceeding, the fact of **disclosure shall not constitute a waiver** of the applicable privilege or legal prohibition against disclosure. **By notification** by a party producing documents that material subject to a privilege or legal prohibition against disclosure has been provided inadvertently, **the party receiving such material shall either (a) immediately return the material**, including any copies of the material, to the producing party, and **shall destroy any notes or work product concerning the material**; or (b) if the party receiving the material disagrees with the producing party's claim, **the dispute shall be submitted to the Court for resolution before the party receiving the material uses it in any way**. In any such dispute, **the party seeking return of the material shall have the burden of making the motion** to establish entitlement to return of the material. (Emphasis added by the Court).

L.R.Civ.P. 26.04(a)(2)(D) is inapplicable to the within matter because the parties urged upon the Court and the Court adopted the parties' language in the Protective Order dated March 3, 2005 which became the "law of the case." The law of the case doctrine proscribes relitigation of issues that were previously settled. The focus is on ensuring that "when a court decides upon

a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Christianson v. Colt Indus. Operating Corp.,* 486 U.S. 800, 816, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988). With the entry of the March 3, 2005 Protective Order, substantive and procedural decisions were made for the handling of the future event of inadvertent disclosure of materials subject to any privilege or legal prohibition against disclosure. The March 3, 2005 Protective Order by outlining the procedure to be followed, supplanted the procedure outlined in L.R.Civ.P. 26.04(a)(2)(D).

The procedures outlined in the Court's March 3, 2005 Order are only triggered if:

1)      "material subject to any privilege or legal prohibition"

2)      "is inadvertently disclosed."

In the instant case, there is considerable dispute between the parties as to whether the documents submitted by Mylan in the discovery productions at issue are "subject to any privilege or legal prohibition." Mylan asserts substantial numbers of the documents were outside of the four areas designated as waived and to be produced by the Chief District Judge in her Order of September 19, 2005. Chance asserts that all of the documents, whether inside or outside of the four designated areas, were not subject to any privilege or legal prohibition because of the undersigned's order of April 18, 2005 finding a waiver of the privileges. Chance contends the real issue with respect to the documents is relevancy. Chance further argues that relevancy is not covered by and is therefor not a proper inquiry under the Courts March 3, 2005 Order.

Both Mylan's and Chance's arguments miss the mark. Whether the documents are subject to any privilege or legal prohibition or merely relevant can only be determined once the Court knows what documents are at issue and has been given the opportunity to see the same. In the instant case, the conduct of Mylan and Chance since the dispute arose on November 22, 2005

deprived the Court of its opportunity to conduct a meaningful review of the documents before the depositions scheduled for the week of January 30, 2006 and before the scheduled close of discovery on February 7, 2006.[1] The parties knew of the dispute on November 22, 2005. On that date Mylan notified Chance of the problem with respect to 1, 643 documents produced on November 18th. On the same date, Chance responded advising Mylan that it had set the November 18th disc of documents aside but served notice on Mylan that it did not want to do away with work product it had created in the intervening four days. Mylan knew of the gravity of its problem between November 22, 2005 and December 8, 2005. Both Mylan and Chance knew by December 12, 2005 that they did not agree on the issue of inadvertent disclosure or the use of the documents claimed inadvertently disclosed. Yet neither Chance or Mylan performed their respective duties created under the March 3, 2005 Order. Chance did not cease using the documents in question. Chance did not promptly bring the dispute to the Court's attention. It did not file the subject motion to bring the matter to the Court until at least January 12, 2006, approximately three weeks prior to the close of discovery in the case. Mylan did not bring the matter to the Court's attention until it filed it's cross Motion To Compel Compliance With The Order And Local Rules Of This Court on January 19, 2006.

The failure of the parties to comply with the Order of March 3, 2005, puts the Court in the position of not being able to review the disputed documents and, based on such a review, determine

---

[1]There are in excess of 24,000 documents that were produced and therefor potentially at issue. While the parties offered samples of the documents at issue and Chance brought bankers boxes containing copies of the all the documents produced to the January 20, 2006 hearing, the undersigned declined to review documents hand selected by one of the parties and declined to review the bankers boxes of documents. To review the hand selected sampling of documents puts the Court's determination of whether the documents are protected or not into the hands of the selector of the documents. To review the bankers boxes of documents within the time remaining for completion of discovery was virtually impossible.

whether the documents fall within or without the area of the undersigned Magistrate Judge's Order of April 18, 2005 and / or any of the four areas of inquiry outlined in the Chief District Judge's Order of September 19, 2005.  There exists too little time between the date of filing of the motions and the planned discovery depositions and the close of discovery for such a review to be accomplished and the undersigned Magistrate Judge has previously advised the parties that discovery in this case would not be extended beyond February 7, 2006.

**Inadvertent Disclosure**

To determine whether a party has waived a privilege or prohibition by disclosure, the Court, on a case-by-case basis,  applies a balancing test containing the following five factors:

1)      " [T]he reasonableness of the precautions taken to prevent inadvertent disclosure in view of the extent of the document productions."

2)      "[T]he number of inadvertent disclosures."

3)      "[T]he extent of the disclosure."

4)      "[A]ny delay and measures taken to rectify the disclosure."

5)      "[W]hether the overriding interests of justice would or would not be served by relieving a party or its error.  *In re Grand Jury Investigation,* 142 F.R.D. 276, 278-279 (MDNC 1992); citing:  *Parkway Gallery Furniture, Inc. v. Kittinger/Pennsylvania House Group, Inc.,* 116 F.R.D. 46 (MDNC 1987); *Liggett Group v. Brown & Williamson Tobacco Corp.,* 116 F.R.D. 205, MDNC 1986); *F.D.I.C. v. Marine Midland Realty Credit Corp.* 138 F.R.D. 479 (EDVa 1991).

While there is no Fourth Circuit case specifically adopting the balancing test, it appears from Judge Russell's opinion for a unanimous panel in *In re Grand Jury Proceedings,* 727 F.2d 1352, 1356 (1984) that documents might lose their privileged status if the disclosing party did not

"take reasonable steps to insure and maintain their confidentiality." None of the factors individually is determinative of the issue.

### Number of Inadvertent Disclosures

The exact gravity of the "erroneous" disclosure is unclear. The universe of documents to be examined by Mylan ranged from 750,000 to 1,000,000. Out of that universe, 28,633 were selected and produced over six separate productions spanning approximately two months of time. Of the 28,633 documents produced, Mylan called for the return of all the discs and thus all of the documents. By mid December 2005, Mylan provided new discs excluding therefrom the documents it determined had been erroneously produced. The end result appears to be that Mylan erroneously produced and disclosed a large portion of the documents. Chance's assertion that the number of documents erroneously disclosed by Mylan was 24,230 pages or 85% of the 28,633 pages totally produced remains substantially unchallenged by Mylan. Even if Chance's numbers are not completely accurate, it is clear that the erroneous disclosure was substantial. "[A] large number of inadvertent disclosures in comparison to the number of documents reviewed shows lax, careless and inadequate procedures." *Parkway Gallery Furniture, Inc. v. Kittinger/Pennsylvania House Group, Inc*., *supra* at 51. Other courts considering the issue have found: no waiver where 8 pages out of 9,500 pages produced did not constitute waiver, *Monarch Cement Co. v. Lone Star Indus., Inc.,* 132 F.R.D. 558 (D.Kan. 1990); no waiver found when plaintiff inadvertently produced one privileged document out of 75,000 documents, *Kansas-Nebraska Natural Gas Co. v. Marathon Oil,* 109 F.R.D. 12 (D. Neb. 1984); no waiver found when 22 of 3,000 documents copied were privileged and erroneously produced, *Lois Sportswear, USA v. Levi Strauss & Co.,* 104 F.R.D. 103 (SDNY 1985; and waiver found where several dozen documents out of a single box of documents produced were claimed privileged and inadvertently produced, *Liggett Group v. Brown &*

*Williamson Tobacco Corp. supra.*

Given the substantial ratio, (24,000 of 28,000 pages), inadequate precautions is strongly suggested.

**Extent of Disclosure**

The Court looks at the extent of the disclosure to determine if there is some way to restore the confidentiality with respect to the documents erroneously produced. Where the production is complete or so substantial that the restoration is impossible or impracticable, a finding of waiver may be warranted, particularly if the other factors to be considered also weigh heavily for waiver. *Parkway Gallery Furniture, Inc. v. Kittinger/Pennsylvania House Group, Inc*., *supra* at 52 wherein the court held: "[W]hen disclosure is complete, a court order cannot restore confidentiality and, at best can only attempt to restrain further erosion."

In the instant case, it is undisputed that Chance started coding and creating work product based on the November 18, 2005 box of 1,643 documents it received from Mylan before Mylan's November 22, 2005 notification. However, as soon as it received the November notification of inadvertent disclosure, Chance put the disc aside and ceased using it pending resolution by the parties. In addition it is apparent that Chance began coding and creating work product based on other documents it received on September 28, October 5, October 31 and November 1 and November 22 before it received Mylan's notification on December 8, 2005 that all discs were suspect and all of the documents had to be returned. Chance's exhibits show that counsel for both parties were conversing with each other over the very documents now in dispute prior to the December 8, 2005 notification by Mylan.(October 27, 2005 teleconference; Davant letter dated November 29, 2005; October 11, 2005 letter; November 4, 2005 letter; and November 15, 2005 depositions at which no objection was made and no designation of the deposition transcripts as

"confidential" was made pursuant to the Court's Protective Order. Finally, it is undisputed that Mylan provided Chance with new discs of documents made after the review. These discs were provided to Chance in December 2005 and are usable without restriction. It is important to note that almost all of Chance's coding, preparation of work product and other use of the challenged (erroneously produced) documents was in house. That is to say, it was done and used by Chance lawyers, not outsiders.

Notwithstanding Mylan's massive erroneous disclosure, the Court's Protective Order provided the parties with a means to deal with the potential damage pending Court review. That Order required cessation of use of the documents at issue. Chance had the power and opportunity to follow the Protective Order pending review by the Court.

**Reasonableness of Precautions Taken to Prevent Inadvertent Disclosure**

Mylan's counsel readily admits that the task of reviewing documents was given to people unfamiliar with the underlying case and unfamiliar with the history of discovery disputes. He also readily admits that his instructions were apparently misunderstood. He readily admits that he and other senior attorneys familiar with the case did not exercise direct oversight of the review and production process. He readily admits that he only reviewed documents that were put in front of him by the lesser attorneys and about which they had some question. He readily admits that, except for an undesignated number of documents, he nor any other senior attorney familiar with the case made any review of the documents before they were produced. As a result, Mylan does not deny that a large number of documents were produced to Chance between September 28, 2005 and November 22, 2005 which should have not been produced.

Under the circumstances of this case, the Court finds there was manifestly inadequate procedures to prevent or minimize erroneous disclosure. In fact, the kind of procedures normally

used were non-existent. There was no multilayer review process. There was no oversight by senior attorneys familiar with the case. This is clearly a case of trying to return the all the horses to the barn after someone left the barn door open. These shortcomings are particularly egregious in light of the fact that the parties to this litigation had already been twice before the Court over the confidentiality and protection of these documents (once before the undersigned and after being dissatisfied with the undersigned's ruling, on appeal under Rule 72(a) to the Chief District Judge) and therefore knew of the importance of these documents. Accordingly, the Court finds that Mylan failed to take reasonable precautions to avoid erroneous disclosure of the documents it now claims are privileged and should not be used by Chance.

**Delay**

The record is clear that Mylan alerted Chance of the alleged inadvertent disclosure of the documents in the November 18, 2005 production as soon as it discovered the same on November 22, 2005. Mylan thereafter began a review of the documents already produced. Accordingly, the Court finds that Mylan timely notified Chance of the erroneous disclosure, timely attempted to snap back the documents in question, and timely triggered the parties rights, duties and obligations under the Court's Protective Order.

However, neither Mylan or Chance performed the duties imposed on them by the Protective Order. No motion was filed by either party until January 18, 2006. This dereliction of duty and dilatoriness deprived the Court of the opportunity to resolve the dispute without potentially impacting the February 7, 2006 close of discovery.

Chance exacerbated the problem by continuing to use the documents in question, particularly after December 8, 2005. Chance knew and understood its duty to bring the matter to the Court. Chance knew its duty under the Protective Order was to: "(a) immediately return the

material, including any copies of the material, to the producing party, and shall destroy any notes or work product concerning the material." Instead, Chance unilaterally decided whether the materials produced were within the four areas of the Chief District Judge's September 19, 2005 Order and whether the same had been inadvertently disclosed by Mylan. Having made those determinations, Chance continued to use the documents. Chance's actions were in clear violation of the provisions of the Protective Order. Chance now seeks to have the Court reward it for its flagrant violation of the Court's Protective Order by continuing to let it use the documents in question during upcoming depositions.

### Overriding Interests of Justice

"In some cases, a broad test of 'fairness' or 'the interests of justice' proves to be determinative. *In re Grand Jury Proceedings, supra* at 282. If the Court finds the defendants analyzed the inadvertently produced material, disclosed it to experts, and strongly relied on it in the formation and prosecution of their defense, waiver may be found. *Bud Antle, Inc. v. Grow-Tech, Inc.*, 131 F.R.D. 179 (NDCal 1990). Where a document had already been used in depositions, waiver was found. *Golden Valley Microwave Foods, Inc. v. Weaver Popcorn Co., Inc.*, 132 F.R.D. 204, 209 (NDInd 1990). However, when a party fails to demonstrate significant reliance on the inadvertently disclosed documents, waiver may be denied. *Kansas City Power & Light Co. v. Pittsburg & Midway Coal Mining Co.,* 133 F.R.D. 171, 174 (D.Kan. 1989).

In the instant case, the Court finds that fairness favors non-waiver for the following reasons:

1) Chance knowingly and intentionally continued to use the documents after being notified on December 8, 2005 of the full extent of the erroneous disclosure by Mylan.

2) Notwithstanding that use, Chance generalizes its usage by giving the Court a broad brush explanation of the same. Its explanation lack particulars.

3)      Statements by Counsel for Chance during the hearing indicate that Chance knew it may not be able to use the documents in question in the upcoming depositions.

4)      Since the depositions to be taken at the end of January 2006 are of Mylan witnesses, Chance has not had the opportunity to use the documents in preparation of those witnesses.

5)      Statements by Counsel for Chance during the hearing indicate that Chance believes the documents it would use in the depositions of Mylan witnesses would approximate 100.

6)      While Chance may have internally prepared for the upcoming depositions using the questionable documents, it has done so at its own risk and in knowing and intentional violation of the Protective Order.

**FRCivP 37(a)(4)(C)**

FRCivP 37(a)(4)(C) provides: "If the motion is granted in part and denied in part, the court may enter any protective order authorized under Rule 26(c) ...."

FRCivP 26(c) provides in pertinent part: "... [T]he court in which the action is pending, ... or alternatively, on matters relating to a deposition, the court in the district where the deposition is to be taken may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense, including one or more of the following: (1) that the disclosure or discovery not be had; (2) that the disclosure or discovery may be had only on specified terms and conditions, including a designation of the time or place; (4) that certain matters not be inquired into, or that the scope of the disclosure or discovery be limited to certain matters; (5) that discovery be conducted with no one present except persons designated by the court; (6) that a deposition, after being seals, be opened only by order of the court. ... If the motion for a protective order is denied in whole or in part, the court may, on such terms and conditions as are just, order that any party or other person provide or permit discovery. ...."

On the facts presented, it appears just and proper to permit some limited use of the erroneously produced documents in the scheduled depositions of Mylan witnesses if for no other reason than to permit discovery to be timely completed while preserving Mylan's right to raise any objections it may have on the basis of privilege or legal prohibition against disclosure. It also seems just and proper to do so because the damage created by use during the deposition can be limited by Order of the Court pending a post deposition review in accord with the letter and intent of the Protective Order and the September 19, 2005 Order of the Chief District Judge.

**Decision:**

Based on application of the foregoing balancing test and the discretionary authority provided under FRCivP 37 and 26 to the factual situation presented, this Court finds and concludes:

1) Mylan's production of documents between September 28, 2005 and November 22, 2005 was the result of negligence of its counsel.

2) Mylan's production of documents between September 28,2005 and November 22, 2005 was massive.

3) Mylan's production of documents between September 28,2005 and November 22, 2005 was unintentional.

4) On discovery of its erroneous production, Mylan's counsel promptly notified Chance of the same.

5) On discovery of its erroneous production Mylan's counsel promptly began and expeditiously completed a review of the documents produced and advised Chance by December 8, 2005 that all discs produced between September 28, 2005 and November 22, 2005 had to be returned in accord with the Protective Order.

6) Mylan's counsel provided Chance with replacement discs by mid December 2005.

7) Mylan did not waive any claim of privilege or legal prohibition it may make with respect to any document its counsel negligently produced to Chance between September 28, 2005 and November 22, 2005.

8) Mylan counsel took precautionary steps during a January 11, 2006 deposition protect from further unauthorized use or disclosure by instructing a witness to not answer inquiries of counsel for Chance concerning a challenged document.

9) Chance knowingly and wilfully violated the Protective Order of this Court by:

   A) Failing to return the documents as requested by Mylan on December 8, 2005.

   B) Continuing to use the documents or the work product it developed from the documents in preparation of its discovery, particularly after December 8, 2005.

   C) Failing to submit the dispute to the Court and, instead, unilaterally deciding that there had been no inadvertent disclosure and that there were no privileges or legal prohibitions to waive and that the documents in question were inside of the four areas of inquiry approved by the Order of the Chief District Judge.

   D) Failing to timely submit the dispute for resolution by the Court until after the matter was forced as a result of Mylan's refusal to permit a witness to testify with respect to a challenged document on January 11, 2006 thus depriving the Court of the reasonable opportunity decide the matter without impacting the February 7, 2006 close of discovery

10) Because of the conduct of Chance and Mylan, the Court did not have the documents in front of it in a timely fashion to determine if they fell within the four areas of inquiry approved by the Chief District Judge and / or whether the same were the subject of privilege or legal prohibition.

11) Because of the conduct of Chance, including but not limited to the delay in submitting the matter to the Court for resolution, Chance rendered it's right under the Protective Order: (b) to submit the matter to the Court for resolution, partially ineffective.

12) The Court does not know what documents Chance may want to use in depositions of Mylan witnesses; how many such documents there may be[2] ; or whether such specific documents, whole or in part, contain privileged material outside of the four subject areas of inquiry approved by the Chief District Judge or are otherwise subject to a legal prohibition.

13) Chance should not be deprived of the opportunity to use all or portions of specified documents from Mylan's negligent disclosure in light of Mylan's delay the submitting the subject dispute to the Court of determination until near the end of discovery.

14) Chance's proposal in settlement of the discovery dispute does not provide adequate protection for material that may be privileged or outside of the four areas of inquiry approved by the Chief District Judge's Order or may otherwise be subject to a legal prohibition.

Accordingly:

A) Chance may use from the documents produced by Mylan to Chance between September 28, 2005 and November 22, 2005 such documents, portions of documents and Chance work product created therefrom in depositions of Mylan witnesses **only** which are now scheduled to be taken between the date of this order and the close of discovery on February 7, 2006 subject to the following conditions:

   1) Provided: at least 24 hours prior to the scheduled commencement of any

---

[2]Chance's counsel suggested at the January 20, 2006 hearing that approximately 100 documents may be used.

such deposition, Chance supplies Mylan with a written statement identifying by Bates number corresponding to the Bates number of the document on the Mylan disc produced between September 28, 2005 and November 22, 2005 each and every such document or portion thereof that Chance will use or from which Chance has created work product which Chance will use in the deposition examination of the witness. This does not require Chance to disclose its work product.

2) Mylan may preserve its objection to the use of the document or portion thereof or the use of the same to create work product by stating on the record of the deposition then being taken it objection, any claim of privilege, any claim that the same is outside of the four areas of inquiry approved by the September 19, 2005 Order of the Chief District Judge and / or that the same is subject to a legal prohibition against disclosure. Mylan shall not instruct the witness to not answer Chance's inquiries based on Mylan's claim of privilege, claim that the same is outside of the four areas of inquiry approved by the September 19, 2005 Order of the Chief District Judge and / or that the same is subject to a legal prohibition against disclosure.

3) Chance shall not use or disclose the so objected to deposition answers or the so objected to documents or portions thereof or work product created therefrom to any person and / or for any purpose than the subsequent scheduled deposition or depositions of other Mylan witnesses without the prior Order of the Court.

4) Mylan or Chance may submit the dispute over the so objected to deposition

answers and /or so objected to documents or portions thereof or work product created therefrom to the Court for determination and resolution within, but not later than five consecutive calendar days after completion of the deposition in which the objection was made by Mylan. This time computation excludes the day of completion of the deposition. Such submission shall constitute an extension of discovery beyond February 7, 2006.

B) For any document produced by Mylan between September 28, 2005 and November 22, 2005 that is not used by Chance in an already scheduled deposition of a Mylan witness, in accord with the conditions provided for under "A" hereof, within twenty-four (24) hours of the close of discovery on February 7, 2006:

1) Chance shall "(a) immediately return the material, including any copies of the material, to the producing party, and shall destroy any notes or work product concerning the material."

2) Lead counsel of record for Chance in this action shall certify in writing filed with the Court that he or she has overseen and avers that Chance has returned the material, including copies of the material to the producing party and has destroyed any notes or work product concerning the material.

C) Mylan's Motion To Compel Complaince With The Order Of This Court And The Local Rules Of This Court (Docket Entry 318) is **GRANTED IN PART AND DENIED IN PART.**

D) Chance's Corrected Motion To Resolve Discovery Dispute (Docket Entry 315) is **GRANTED IN PART AND DENIED IN PART.**

E)      The Court's decision is split within the meaning of FRCivP 37 and 26 and therefore claims by either party for fees, costs, expenses are **DENIED.**

In is so **ORDERED.**

The clerk is directed to remove the Docket Entry 315 and Docket Entry 318 from the docket of motions actively pending before the Court and is further directed to provide copies of this Opinion/Order to all counsel of record for each of the parties.

Dated: January 25, 2006

/s *John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE